UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:06-cr-00428-KJM |
| Plaintiff, | ORDER |
| v. | |
| Daryl Summerfield, | |
| Defendant. | |

Defendant Daryl Summerfield has successfully completed four years of his five-year term of supervised release. He moves to terminate his supervised release early under 18 U.S.C. § 3583(e)(1). As explained in this order, early termination is in the interest of justice, and the relevant sentencing factors favor early termination. The court thus **grants the motion**.

I.    **BACKGROUND**

In 2006, Summerfield was charged with more than forty counts relating to the possession and distribution of cocaine, money laundering and transactions in criminally derived property. ECF No. 23. About six years later, he agreed to plead guilty to three charges: conspiracy to distribute cocaine and to possess cocaine with an intent to distribute, possession of cocaine with an intent to distribute, and engaging in a transaction in criminally derived property. *See generally* Plea Agreement, ECF No. 181. He admitted in the factual basis attached to his plea agreement that he had "orchestrated the shipment of multiple kilograms of cocaine to Alaska" by ship and

1

van and that federal agents had found several kilograms of cocaine in packages he had attempted to send to Alaska by FedEx and UPS. *See id.* Ex. A at 1–2. Summerfield also admitted to using the money he had made in cocaine trafficking operations to pay for real estate in Sacramento, and he did so using transactions "designed to conceal and disguise that [he] was the source of the money." *Id.* at 2. The government and Summerfield agreed that if the court accepted his plea, a prison sentence of 240 months would be "the appropriate disposition in this case" under Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Agreement at 8. This court initially accepted his plea conditionally, and then at sentencing accepted the parties' plea agreement as binding and imposed a 240-month custodial sentence, followed by a five-year term of supervised release. *See* Mins. Change of Plea Hr'g, ECF No. 178; Sent. Hr'g Mins., ECF No. 202; Judgment & Commitment, ECF No. 203.

Several years later, in 2021, about a year into the COVID-19 pandemic, Summerfield asked the court to reduce his custodial sentence to time served under 18 U.S.C. § 3582(c)(1)(A). He argued his health conditions—which included a high body mass index, type II diabetes and hypertension—made him unusually vulnerable to a severe case of COVID-19, and he argued he was likely to contract COVID-19 within the prison facility where he was housed. *See* Order (Apr. 15, 2021) at 4–9, ECF No. 234. At that time, it was unclear when or whether a vaccine would be available to him, *see id.* at 8, and although he had already contracted and recovered from COVID-19, health authorities were uncertain about the risks of reinfection, *see id.* at 6–7. Summerfield argued the relevant sentencing factors weighed in favor of a reduced prison sentence, particularly in light of his commitment to rehabilitation, the large portion of his sentence he had already completed (about three quarters) and his detailed release plan. *See id.* at 10–12; *see also* 18 U.S.C. §3553(a). The court found "Summerfield's combination of medical conditions place[d] him at high risk of experiencing severe complications from COVID-19 if he [was] reinfected, and those conditions provide[d] extraordinary and compelling reasons justifying compassionate release" under 18 U.S.C. § 3582(c)(1)(A). *See id.* at 12. The court was concerned with his criminal history, given his past convictions for thefts and firearms crimes, but found "[h]is participation in prison rehabilitation programming and his extensive release plan

1   mitigate[d] the risk of danger to the community upon his release," so the court concluded the

2   relevant sentencing factors favored a reduced custodial sentence and granted his motion, without

3   modifying the length of his term of supervised release or release conditions.  *See id.*

4        In June 2025, Summerfield filed a pro se request to terminate his supervised release.  ECF

5   No. 237.  The court referred the matter to the Office of the Federal Defender, and he is now

6   represented in this matter by an Assistant Federal Defender, who filed a supplemental motion to

7   terminate his supervised release under 18 U.S.C. § 3583(e).  Mot., ECF No. 239.  His motion is

8   based on the following facts, which the government does not dispute:

9        • He has completed approximately four years of his five-year term.

10       • He has not violated any conditions of his supervised release, including the drug

11         testing requirements; he has passed all random drug tests.

12       • According to Summerfield's counsel, a Probation Officer "confirmed [he] has

13         been communicative during supervision and [has] made himself available for

14         supervision."  *Id.* at 5.

15       • Summerfield has "volunteered in rehabilitative activities that give back to his

16         community," including with Stay Out Solutions, "a local reentry advocacy

17         program."  *Id.*  "He has helped the program by managing large clean out projects."

18         *Id.*; *see also id.* Ex. A (letter of support from founder and CEO of Stay Out

19         Solutions).

20       • Summerfield has "met others who have supported his rehabilitation," including his

21         mentor, Leigh Langerwerf, who describes Summerfield as "contrite, driven, and

22         kind."  *Id.* at 6; *see also id.* Ex. B (letter of support from Langerwerf).

23       • A clinical management consultant who has worked with Summerfield to improve

24         his health attests to his efforts to make "significant changes in his life, for the

25         better," and she finds it "hard . . . to imagine" that he did the things that "landed

26         him in prison."  *Id.* Ex. C (letter of support from April Ceballos).

- Summerfield has "reconnected with his six children and is helping them make pro-social choices." *Id.* at 6.  Five of his children have submitted letters in support of his motion.  *See id.* Exs. D–H.

- Summerfield has "become invested in his church, where he volunteers, counsels incarcerated individuals, and provide[s] service in his community." *Id.* at 6; *see also* Ex. I (letter of support from Bill Miller).

- Summerfield has "overcome major health issues" such as heart disease, severe diabetes, breathing problems, high blood pressure, and temporary partial blindness, and he "is working with the California Department of Rehabilitation to obtain training so that he may reenter the job force" as a truck driver.  *Id.* at 7.

The government opposes Summerfield's motion based on (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) "the need to afford adequate deterrence to criminal conduct," and (3) the need to protect the public from further crimes of the defendant."  Opp'n, ECF No. 239, at 5 (quoting 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C)).  In the government's view, Summerfield has "already received an unearned windfall in the form of a substantial reduction in his original prison sentence." *Id.*  The government also believes "he remains a high-risk offender who should be carefully monitored in the community during the full term of his supervised release." *Id.*  It characterizes him as the former overseer of "a vast drug-trafficking empire responsible for hundreds of kilograms of cocaine, as well as sophisticated laundering of drug money through front businesses and property purchases." *Id.* at 5–6.  Finally, the government argues Summerfield has demonstrated neither that there has been any unforeseen change in his circumstances nor that he will suffer from any "undue burden" if he must complete the full term of his supervised release.  *Id.* at 6.

Summerfield's counsel has filed a reply.  Reply, ECF No. 241.  The court submits the matter on the briefing.

## II.    DISCUSSION

A district court may end a term of supervised release after the completion of one year of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant

4

1    released and the interest of justice." 18 U.S.C. § 3583(e)(1).[1]  It is the defendant's burden to

2    show early termination is warranted.  *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir.

3    2006).

4          The court must consider the following sentencing factors when it makes its decision: the

5    nature and circumstances of the offense and the history and characteristics of the defendant; the

6    need to afford adequate deterrence to criminal conduct; the need to protect the public from further

7    crimes of the defendant; the need to provide the defendant with needed educational or vocational

8    training, medical care, or other correctional treatment in the most effective manner; the kinds of

9    sentence and sentencing range established; any pertinent policy statement by the Sentencing

10   Commission; the need to avoid unwarranted sentence disparities; and the need to provide

11   restitution to any victims of the offense.  *See* 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(1),

12   (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).  It is not necessary for the court to

13   "tick off" each of these factors in making its decision.  *United States v. Emmett*, 749 F.3d 817,

14   822 (9th Cir. 2014) (alterations omitted) (quoting *United States v. Carty*, 520 F.3d 984, 992 (9th

15   Cir. 2008) (en banc)).  This court's task is instead to ensure the record "as a whole" contains "an

16   explanation that would permit meaningful appellate review and justify the court's conclusion in

17   light of the parties' nonfrivolous arguments and the legal standard."  *Id.*

18         In addition to the factors above, "exceptionally good behavior" and new or changed

19   circumstances can support a defendant's request, but early termination is not solely reserved for

20   cases of exceptionally good behavior or new or changed circumstances.  *United States v. Ponce*,

21   22 F.4th 1045, 1047 (2022).  A court also can exercise its discretion to terminate supervised

22   release if doing so will prevent an "undue hardship," but again, undue hardship is not a

23   prerequisite for relief under § 3853(e)(1).  *Emmett*, 749 F.3d at 819.

---

[1] The government does not argue the plea agreement or Rule 11(c)(1)(C) bars
Summerfield from seeking or obtaining relief under § 3583(e)(1).  The court need not consider
any potential conflict between Rule 11(c)(1)(C), the plea agreement, and § 3583(e)(1), however,
because the plea agreement does not refer to any agreement about the length of a term of
supervised release.  *See* Plea Agreement at 8 (referring only to "240 months in prison").

1    Here, Summerfield is eligible to request relief under § 3583(e)(1), and the court is

2    satisfied after reviewing the relevant sentencing factors that his conduct and the interests of

3    justice warrant the early termination of his supervised release.

4    That said, the government is correct that some of the relevant factors weigh against early

5    termination.  The nature and circumstances of Summerfield's offenses were serious.  His history

6    and characteristics justified the lengthy custodial sentence and five-year term of supervised

7    release this court originally imposed.  His full sentence, including his term of supervised release,

8    was necessary to afford adequate deterrence to criminal conduct, and the record does not show

9    early termination is necessary to avoid undue hardship or is justified by any changes in the

10    relevant circumstances.

11    Although these factors and considerations are relevant, many others weigh heavily in

12    favor of early termination.  Most importantly, the court finds Summerfield's actions and overall

13    conduct during his supervised release to date demonstrate there is very little danger or risk to the

14    public.  The court has confirmed with his assigned probation officer that Summerfield's current

15    Post Conviction Risk Assessment (PCRA) score is "low/moderate" risk, as the defense

16    represents.  Reply at 3 n.1.  Since his release from prison, he has begun to rebuild ties to his

17    family and community, and he has complied fully with the terms of his supervised release,

18    including submitting to random drug tests, which he has always passed.  Summerfield also has

19    secured educational and vocational training, and continued supervised release appears

20    unnecessary to provide him with any further training or care.  Nor does an additional year of

21    supervised release appear necessary or helpful to ensure Summerfield receives necessary medical

22    care, given his successful treatment and efforts to improve his health.  No party suggests a

23    continued term of supervised release will help to provide restitution to any victim; the court

24    imposed no restitution obligation.  *See* Judgment & Commitment at 5.  His criminal history also

25    is now many years in his past, and his probation officer has advised the court he has not had any

26    new law violations since he filed his current motion, nor is there any indication he is involved in

27    new criminal activity .

1   　　　The parties have not identified any directly relevant policy statements by the U.S.

2   Sentencing Commission, but the Commission's description of the general purposes of supervised

3   release do support Summerfield's motion. *See* Mot. at 2 (citing U.S. Sent. Comm'n, Federal

4   Offenders Sentenced to Supervised Release at 2 (2010)).  "'Supervised release, in contrast to

5   probation, is not a punishment in lieu of incarceration' and, moreover, supervised release is

6   primarily concerned with 'facilitating the reintegration of the defendant into the community.'"

7   Federal Offenders Sentenced to Supervised Release at 2 (alterations omitted) (first quoting *United*

8   *States v. Granderson*, 511 U.S. 39, 50 (1994), then quoting *United States v. Vallejo*, 69 F.3d 992,

9   994 (9th Cir. 1995)).

10   　　　The remaining factors—the kinds of sentence and sentencing range established and the

11   need to avoid unwarranted sentencing disparities—do not weigh in favor or against termination.

12   Taking all the relevant factors into consideration together, then, the court finds they weigh in

13   favor of early termination.

14   　　　The court concludes by marking its disagreement, as it has once before, with the

15   government's assertions in its opposition that Summerfield is the beneficiary of an "unearned

16   windfall" and that terminating his supervised release would unjustly add to that "windfall." *See*

17   Opp'n at 5.  The government did not ask this court to reconsider its prior decision to reduce

18   Summerfield's custodial sentence or appeal that decision.  Nor does the government argue now

19   that this court erred.  The government's reference to an "unearned windfall" thus accomplishes

20   little more than risking an inappropriate suggestion of disrespect for this court's decisions and the

21   relevant law.  *See* Order (Aug. 15, 2025) at 3 & n.1, *United States v. Parker*, No. 06-479, ECF

22   No. 267 (expressing similar concerns in reaction to government's claims of an "unearned

23   windfall").

24   　　　References to unearned windfalls also imply the government's primary concerns with

25   Summerfield's motion are not based on the relevant sentencing factors, but rather on its view that

26   Summerfield has unjustly escaped a punishment he actually deserves.  Congress did not instruct

27   district courts to consider punishment in response to a defendant's motion to terminate supervised

1  release.  To the contrary, the omission of any reference to punishment and § 3553(a)(2)(A)[2] from

2  the factors listed in § 3553(e) appears to have been intentional.  *See Esteras v. United States*, 145

3  S. Ct. 2031, 2040 (2025).  This implies strongly that Congress intended for district courts not to

4  consider the punitive effects of continued supervised release.  The Sentencing Commission's

5  description of the general purposes of supervised release, cited above, supports this conclusion.

6  By the same token, this order should not be interpreted as minimizing or justifying Summerfield's

7  actions supporting his conviction, for which he served a significant sentence, or the importance of

8  following the applicable law.

9  **III.    CONCLUSION**

10        The motion to terminate supervised release (ECF No. 239) is **granted**.

11        IT IS SO ORDERED.

12  DATED:  September 11, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] "The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . . to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).